

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

JENNIFER HORNBEEK,

    Plaintiff,

v.                                            CIVIL ACTION NO.: CV507-046

MICHAEL J. ASTRUE, Commissioner
of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge L. Ellis Davis ("the ALJ" or "ALJ Davis") denying her claim for Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision is supported by substantial evidence and should be affirmed.

Plaintiff protectively filed an application for Supplemental Security Income on September 22, 2004, alleging that she became disabled on April 1, 2002, due to anxiety, depression, and pain in her neck and left arm. (Tr. at 17, 45). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On October 17, 2006, ALJ Davis held hearing at which Plaintiff appeared and testified. Kim Bennett, a vocational expert, also testified at this hearing. ALJ Davis

found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 17). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 4).

Plaintiff, born on May 17, 1970, was thirty-six (36) years old when ALJ Davis issued his decision. She has obtained a General Equivalency Diploma ("GED"). (Tr. at 133; Def.'s Br., p 2). Her past relevant work experience includes employment as a cashier[1]. (Tr. at 210).

### **ALJ'S FINDINGS**

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to

---

[1] Plaintiff also indicated she painted and pressure washed buildings after she stopped working as a cashier at Wal-Mart in 2002. (Tr. at 210). However, this job may not have been considered substantial gainful activity, as the ALJ did not acknowledge this job. Plaintiff's attorney sent a letter to the ALJ amending Plaintiff's alleged onset date to May 1, 2003. (Tr. at 228).

preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of April 1, 2002, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 19). At Step Two, the ALJ determined that Plaintiff had disorders of the back and affective and mood disorders, which are considered severe impairments. Also at Step Two, the ALJ determined Plaintiff's impairments did not meet or medically equal a listed impairment. ALJ Davis found Plaintiff had the residual functional capacity to perform work at the light exertional level with the ability to reach frequently and no more than occasional climbing of ladders, ropes, and scaffolds, concentrated exposure to dust, fumes, smoke, chemicals, noxious gases, unprotected heights, and moving machinery. ALJ Davis also found Plaintiff had a moderate ability to maintain attention and concentration, to understand, remember, and carry out detailed instructions, and to relate predictably in social situations. (Tr. at

20). At the next step, ALJ Davis concluded that Plaintiff could not perform her past relevant work. ALJ Davis considered Plaintiff's age, education, work experience, and residual functional capacity and determined Plaintiff could adjust to other jobs which exist in significant numbers in the national economy and which Plaintiff could perform; these jobs are: counter clerk, information clerk, and surveillance system monitor. (Tr. at 22-23).

## ISSUES PRESENTED

Plaintiff asserts ALJ Davis improperly failed to identify medical evidence to support his finding of her residual functional capacity.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard

requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

Plaintiff alleges ALJ Davis cited no medical evidence which supports his finding that she has a moderate ability to sustain mental activities of a job on a regular and sustained basis, nor did he define "moderate ability." Plaintiff asserts she was under the care of doctors and counselors at Satilla Community Mental Health Center and was treated for mental disorders. Plaintiff also asserts her Global Assessment of Functioning ("GAF") levels ranged mostly between 41 to 50, which are characterized as being "serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." (Pl.'s Br., p. 7). Plaintiff contends the ALJ should have sent her for a consultative evaluation if he was not going to credit the limitations her mental health providers found, as evidenced by her GAF scores. Plaintiff also contends the ALJ did not give an adequate reason for rejecting her testimony as to the severity of her pain. Plaintiff asserts the ALJ also failed to give a good reason to discount the opinions of her treating medical personnel.

Defendant contends ALJ Davis relied on Rule 202.21 in finding Plaintiff not disabled, which is consistent with the testimony offered by the vocational expert. Defendant avers ALJ Davis' reliance on the vocational expert's testimony was proper, as long as the hypothetical posed to the expert adequately portrayed Plaintiff's

impairments and the expert identified a significant number of jobs an individual with Plaintiff's impairments could perform. Defendant asserts the opinions of the reviewing medical experts provide an adequate basis for the ALJ's residual functional capacity finding.

In order to establish disability based on testimony of pain and other symptoms, a social security disability benefits claimant must show: (1) evidence of underlying medical condition; and (2) either (a) objective medical evidence confirming severity of alleged pain or (b) that objectively determined medical condition could reasonably be expected to give rise to claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).

The opinions from treating sources "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241.

Through the use of vocational expert testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999

WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

ALJ Davis determined Plaintiff's affective and mood disorders resulted in a mild restriction on her activities of daily living, mild to moderate difficulties in maintaining social functioning, and mild to moderate difficulties in maintaining concentration, persistence, or pace. ALJ Davis noted there was no evidence of any episodes of decompensation of an extended duration or that Plaintiff's mental disorders resulted in "such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause [Plaintiff] to decompensate[.]" (Tr. at 19). ALJ Davis also noted the evidence did not show Plaintiff had a "history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such arrangement." (Id.). The ALJ pointed to Plaintiff's records from Satilla Community Services, which revealed Plaintiff's reports of depression, obsessive-compulsive disorder, and difficulty dealing with everything that has happened in her life. ALJ Davis noted the longitudinal history of these records showed Plaintiff had situational problems, not long-term functional impairments. ALJ Davis also noted personnel at Satilla Community Services relied heavily on Plaintiff's subjective reports of symptoms and limitations and seemed to "uncritically accept" as true much, if not all, of Plaintiff's self reports.

The ALJ stated Plaintiff's medical records from Waycross Orthopaedics revealed examination of Plaintiff's left shoulder showed she had full range of motion in all planes with no sign of any instability with no obvious deformities, no localized tenderness in her left shoulder, no winging of her left scapula, and, though she claimed weakness, her

rotator cuff was strong against resistance. ALJ Davis observed Plaintiff had a Magnetic Resonance Image ("MRI") of her left shoulder, which showed some impingement. Plaintiff reported to Dr. Robert Lykens that she took narcotic pain medication all of the time, but three (3) months later, she was taking no medications and reported her shoulder felt better. ALJ Davis also noted Plaintiff underwent cervical microdiskectomy and arthrodesis at C5-6 with placement of PEEK interbody cage with morselized autograft and demineralized bone matrix and anterior cervical plate fixation at C5 to C6. (Tr. at 21). Plaintiff was released from physical therapy after reporting "a significant decrease in her pain level, and she had increased range of motion to within normal limits." (Id.) ALJ Davis noted Plaintiff was referred to the Pain Management Center at Phoebe Putney Memorial Hospital for evaluation and treatment, and at the end of her treatment, Plaintiff reported her pain was decreasing.

ALJ Davis noted that, given Plaintiff's allegations of totally disabling symptoms, it would be expected to see some indication in her treatment records that her treating physicians placed some sort of restrictions on her activities and abilities; however, ALJ Davis stated his review of Plaintiff's medical records did not reveal that Plaintiff's treating physicians placed any restrictions on her. The ALJ observed the State Agency doctors opined Plaintiff was capable of performing work at the medium exertional level. ALJ Davis nonetheless determined Plaintiff was capable of performing work at the light exertional level based on Plaintiff's testimony and the medical records he received at the hearing.

There is no evidence from Plaintiff's treating sources that she suffered from any condition which would have resulted in limitations sufficient to be considered disabled or

to otherwise substantiate her allegations of pain. Plaintiff missed some of her appointments with her mental health providers, and, as ALJ Davis noted, her mental health issues were situational. (Tr. at 396, 403, 407, 427). Additionally, ALJ Davis observed that mental health personnel at Satilla Community Services relied heavily on Plaintiff's subjective reports, which constitutes "good cause" to discount any opinions expressed by these treating sources (i.e., the opinions were not supported by the record or is otherwise conclusory). Thus, ALJ Davis relied on the opinion of the State Agency reviewing doctor as to Plaintiff's non-exertional limitations. (Tr. at 20, 350-67). Moreover, Plaintiff reported feeling better with her physical pain, whether through the use of medications or other treatments. (Tr. at 268, 270, 424, 460-64, 473). The ALJ determined that Plaintiff's exertional limitations were greater than those found by the State Agency doctors. (Tr. at 21, 334-49). Finally, ALJ Davis' hypothetical posed to Ms. Bennett, the vocational expert, seemed to encompass all of the exertional and non-exertional limitations ALJ Davis found credible. (Tr. at 526-27). ALJ Davis' determination that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence. Plaintiff is not entitled to her requested relief.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

SO REPORTED and RECOMMENDED, this 4th day of August, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE